CASE 29—PETITION EQUITY—OCTOBER 22.

# White's Administrator v. Curd.

### APPEAL FROM WHITLEY CIRCUIT COURT.

1. INTEREST.—A note executed under the conventional ten per cent. interest law, bearing interest at ten per cent., boie interest at that rate only until maturity, and after that at the rate of six per cent., unless due one day after date or "instanter;" and in that event it bore ten per cent. from date until paid.

2. SAME—MISTAKE.—In a suit upon a note due twelve months after date, bearing interest at ten per cent., it being alleged that by the terms of the contract the note was to bear ten per cent. from its date until paid, and that by mistake the note was not so drawn, the fact that the payor for several years paid the interest annually at the rate of ten per cent. is held to be sufficient evidence, under the circumstances, in the absence of opposing evidence, to establish the alleged agreement and mistake.

3. LIMITATION.—A "due bill" is "a written obligation for the payment of money" within the meaning of the statute of limitations, and an action thereon is barred only after the lapse of fifteen years.

4. HOMESTEAD—LIEN.—The mere fact that borrowed money was used by the borrower in discharging a lien upon his homestead, does not entitle the lender to the benefit of the lien thus discharged, there being no agreement to that effect.

C. W. LESTER FOR APPELLANT.

1. A note "to bear interest from date at the rate of ten per centum per annum," bears that rate only to maturity, and after that six per cent, (McDonald v. Green, MS. Op., April 21, 1883; Robertson v. Waltrip, MS. Op., January 17, 1883; Ballow v. Jones, MS. Op., March 12, 1886.)

2. Usurious interest paid must be applied first to payment of legal interest, and then as credit on debt. (Ellis v. Brannin, 1 Duvall, 50; Stone v. McConnell, 1 Duvall, 56.).

3. A due bill for goods bought is of no higher dignity than a merchant's
account, and is barred in two years. (Bouvier's Law Dictionary, vol.
1, p. 512; Bouvier's Law Dictionary, vol. 2, p. 386.)

4. Money paid for another in discharge of a lien debt does not entitle the
payor to substitution to the lien claim without an agreement to that
effect. (Griffin v. Prather, 14 Bush, 571.)

R. D. HILL FOR APPELLEE.

1. An agreement to pay "ten per centum per annum," is equivalent to an
agreement to pay "annually," and the interest runs at that rate until
the debt is paid. (Graves v. Walters, MS. Op., Nov. 23, 1882.)

2. A due bill bearing interest from date is a written promise to pay, and
the statute of limitations applies to it as such. (Warren v. Perry, 5
Bush, 451; Clay v. Clay, 7 Bush, 96; Prewett v. Wortham, 79 Ken-
tucky, 287; Kendall v. Talbot, 2 Bibb, 614; General Statutes, chap.
22, sec. 15.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellee instituted suit in the Whitley Circuit
Court against the appellant, Dempsey White, as the
administrator of M. E. White, deceased, and the widow
and heirs of said deceased, on three notes—one for five
hundred dollars, dated May the 20th, 1872, and due
twelve months after date, together with interest from
date, "at the rate of ten per cent. per annum," and
one for six hundred and seventy-five dollars and nine-
ty-one cents, dated the eighth of October, 1873, and
due instanter, together with "ten per cent. interest
thereon from date;" and one for sixty-four dollars
and thirty cents, dated the eleventh of September,
1877, and due instanter, together with interest thereon,
"at eight per cent. from date."

The legal construction of the first-named note, ac-
cording to the repeated decisions of this court, is,
that it bears interest at the rate of ten per cent. per
annum until its maturity, and after its maturity it
only bears six per cent. interest. But it is alleged

that by the terms of the contract the note was to bear ten per cent. interest per annum from its date until paid; and that the note was to be so drawn; but by mistake it was not so drawn. The intestate paid the interest annually on the note at the rate of ten per cent. per annum until 1879.

We think that this fact, under the circumstances of this case, furnishes sufficient evidence, in the absence of opposing evidence, to establish the alleged agreement and mistake; and, therefore, the lower court did right in not applying four-tenths of the sums so paid as partial payments of the principal of said note.

It is also well settled by this court that, under the conventional ten per cent. interest law, if a note was made payable one day after its date, and bore ten per cent. interest from its date, that such note continued to bear ten per cent. interest until it was paid; for the reason that, to limit the interest at ten per cent. to only one day would be an absurdity which it was not supposed the payor and payee intended to indulge in.

It is contended, however, that the second and third-named notes are only due bills, simply acknowledgments of indebtedness, and not promises to pay. We can not so construe these two pieces of paper; each one of them acknowledges an indebtedness, and promises to pay it—not only the principal, but also the interest at the rate of ten per cent.

It is also contended that said due bills are not promises to pay, but merely acknowledgments of indebtedness, and, therefore, the five years' statute of limitation bars the right of action thereon. To this proposition we can not agree.

As before said, such paper is not only an acknowl--
edgment of indebtedness, but it contains a promise to
pay it; such is its meaning, and the right of action
on it is not barred, except by the statute of fifteen
years' limitation.

Besides, the language of chapter 71, article 3, sec-
tion 1, is that the action on a written "obligation for
the payment of money" shall be commenced within
fifteen years after the right of action first accrued.
As these two pieces of paper are obligations for the
payment of money, the right of action thereon is not
barred until the lapse of fifteen years from the time
the right of action first accrued.

The appellee took a mortgage on the tract of land in
controversy to secure the payment of the five hundred
dollar note.    This note was given for borrowed money.
And at the time the money was borrowed and the
mortgage was taken, M. E. White occupied the land as
a homestead, and continued to so occupy it until his
death.    His widow, who now claims a homestead in
the land, never joined in the mortgage.

The appellee alleges that, prior to the execution of
the mortgage, M. E. White was the surety of the sher-
iff of Whitley county on his revenue bond, and that
the Commonwealth obtained a judgment on this bond
against the sheriff and M. E. White, upon which exe-
cution was issued; which execution was levied on the
land in controversy; and that the land was sold to sat-
isfy the execution; and that the Commonwealth bought
it in at the sale; whereby the lien of the Common-
wealth on the land was continued.    That the appellee
applied three hundred and six dollars of the five hun--

dred dollars borrowed by M. E. White of him to the discharge of said lien ; that by reason of the foregoing facts he is entitled to be substituted to 'the lien of the Commonwealth.

The record shows that, prior to the execution of the mortgage, the land in controversy had been sold and purchased by the Commonwealth, to satisfy an execution against M. E. White and others ; and M. E. White applied three hundred and six dollars of the five hundred dollars borrowed of the appellee to the discharge of his indebtedness to the Commonwealth, whereby the Commonwealth's lien on the land was discharged.   But the record does not show that the appellee in any way, or in any event, looked to the lien in favor of the Commonwealth as an indemnity for his loan or any part of it.   Nor does the record show that there was any understanding or agreement between the appellee and M. E. White that the appellee was to have a lien on the land equivalent in scope and effect to that of the Commonwealth.   On the contrary, it appears that M. E. White was to give the appellee the mortgage sued on as security for the five hundred dollars ; and that he did give it for that purpose ; and that the appellee looked to the mortgage, as given, as security for the money loaned ; and that he looked to no other security whatever.   Under the foregoing circumstances we think that the appellee is not entitled to be subrogated to the lien of the Commonwealth.   And as Mrs. White did not join in the mortgage, she is entitled to a homestead in the land in controversy.

Therefore, the judgment of the lower court is reversed to the extent that it disallowed the appellant,

Mrs. White, a homestead in the land, and the case is remanded for further proceedings consistent with this opinion.